## GOMEZ v. UNITED OFFICE AND PRO-FESSIONAL WORKERS OF AMERI-CA, CIO, LOCAL 16, et al.

### Civil Action No. 3019—47.

District Court of the United States for the District of Columbia.

July 31, 1947.

Posner, Berge, Fox & Arent, of Washington, D. C., for plaintiff.

Joseph Forer, of Washington, D. C., for defendants.

LAWS, Chief Justice.

Plaintiff, Ethel M. Gomez, is the owner and operator of a dance studio in Washington, D. C., which sells dancing instruction to the general public and which is operated under the name and style of "Arthur Murray Studios of Washington, D. C."

Arthur Murray, a well known dancing instructor, owns and operates dance studios in New York, New York, and invents and develops dance routines and teaching methods.

Plaintiff, by the terms of an agreement with said Arthur Murray, dated November 1, 1941, is licensed to use in the District of Columbia and Virginia the name of "Arthur Murray" in connection with her business, to use Arthur Murray's teaching methods and to use promotion material and publicity originated by said Arthur Murray, in return for the payment to Murray of a

percentage of the gross weekly receipts of plaintiff's business.

The licensing agreement requires plaintiff to submit the names of all dancing instructors to be employed by her to Arthur Murray for his approval and to honor unused portions of dancing lessons paid for and unused by pupils enrolled in Arthur Murray's studios in New York or in other studios licensed by him.

Plaintiff has no financial interest in or control over dance studios operated by Arthur Murray in New York or licensed by him elsewhere.

Except as hereinbefore stated, Arthur Murray has no financial interest in and does not exercise control over plaintiff's business.

Defendant United Office and Professional Workers of America, CIO, Local 16, hereinafter called the union, is a labor organization which includes in its membership and represents as a labor union, certain dancing teachers employed by Arthur Murray in his New York dance studios. Said union has been certified by the New York State Labor Relations Board as the sole collective-bargaining representative of the dancing instructors of Arthur Murray's New York studios.

Defendant Anne Forsyth is a dancing instructor employed by Arthur Murray in his New York studios and is a member of said union.

Defendants and the dance studios of Arthur Murray in New York are engaged in a controversy concerning the terms and conditions of employment of Arthur Murray's dancing instructors in New York. This controversy concerns minimum wages, union recognition, job security, grievance procedure and an alleged lockout of dancing instructors employed in the New York studio. This controversy resulted in a strike of certain dancing instructors of Arthur Murray's New York studio on July 9, 1947, and in the picketing of said studios.

On July 22, 1947, defendant Anne Forsyth and two other striking union members, Monica Keating and Victor DeGennaro, came to Washington, D. C., from New York and began to picket the establishment of plaintiff. The picketing continued on July 23 and 24; on the 24th the three pickets were joined by about 15 other persons from CIO unions in Washington. The picketing of plaintiff's place of business was accompanied by the display of placards and the distribution of handbills to induce the public not to patronize plaintiff's place of business.

One of the objects of the picketing was to induce the public not to patronize plaintiff's establishment. It is claimed by the defendants that it is their object to inform the public of the union side of its labor dispute with Arthur Murray in New York. The picketers displayed placards and handbills. The handbills carry in large print at the top the caption "We are Arthur Murray Teachers" with a statement below in smaller print "from his main New York Studio at 342 Madison Avenue and 11 E. 43rd Street." In large print on the same handbill is the caption "Why We Picket Here" beside which are specified a number of alleged reasons which, if applied to the plaintiff, would charge her with actions and attitudes which would excite the condemnation of a large portion of the general public and would tend to discourage prospective customers from doing business with the plaintiff. None of these statements are true if applied to the plaintiff. The statements are calculated to cause persons reading them to believe that the plaintiff's establishment is a party to a labor dispute and that the plaintiff's establishment has been involved in the acts, attitudes and practices set forth in the placards and has caused customers and prospective customers to believe that the plaintiff was involved in a dispute.

None of defendants is employed by plaintiff.

Defendants do not represent, or seek to represent, plaintiff's employees.

Defendants do not seek employment for themselves or others at plaintiff's place of business.

Defendants do not seek to alter or affect the terms and conditions of employment at plaintiff's studio.

The picketers did not induce or encourage the employees of the plaintiff to engage in a strike or a concerted refusal in

the course of their employment to perform any services. Defendant informed the plaintiff that the pickets wished her to protest to Mr. Murray to settle his labor dispute. Plaintiff offered to telephone Mr. Murray to urge him to arbitrate the dispute if the picketing of ·the studios in Washington was terminated. One of the picketers stated they were going to remain until the New York matters were arbitrated

The picketing herein described was at all times peaceful and orderly, and none of the pickets engaged in any violence or disturbance.

Defendants' acts of picketing against plaintiff will continue unless restrained and if continued will tend to disrupt and perhaps destroy her business.

The threatened injury to plaintiff is immediate and irreparable and a preliminary injunction should issue unless under existing law the Court has no jurisdiction to act.

The Norris-LaGuardia Act makes provision that Federal Courts shall not have jurisdiction to issue an injunction "in any case involving or growing out of any labor dispute * * * from * * * giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C.A. § 104.

■ Plaintiff raises the question whether the present case is one involving or growing out of a labor dispute within the meaning of the Act. In defining terms used in the Act, provision is made by Section 113(a) that "a case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation." This language undoubtedly defines the relationship of the persons who are involved in a case protected against injunction; they need not be related as employer and employee, by contract or by association of any kind. But does the language further undertake to define what is a case involving or growing out of a labor dispute? A case, in legal terminology, is a proceeding by which one party

seeks to obtain relief against another named in the suit, and it follows that a case involving or growing out of a labor dispute usually would be defined in a court to be a suit by which a party litigant seeks to obtain adjudication of a wrong affecting labor committed by another party litigant. The case at bar grows out of acts of picketing plaintiff's place of business. Concededly there is no labor dispute between plaintiff and defendants. The labor dispute is between defendants and another person not a party to the suit. Plaintiff does not seek to enjoin or to limit the picketing of that other person's places of business. There is no relief plaintiff is able to give defendants. Can it be said that Congress intended to change the usual legal definition of a labor case by granting laborers, described as helpless to deal individually with management, the right to use methods of coercion directly against an innocent party who also is helpless; that is to say, helpless to give the laborers relief? Such a construction of the Act would bring about inequitable results and in the absence of clearly compelling language, should not be made. In the cases cited to me, which in the limited time I have had to study the question, I have not found any decision on this point. In all of the cases, the party seeking the injunction appeared to have available some course of action by which he might grant at least partial relief to the laborers, or in which he sought to enjoin the picketing of the place of business of a party to a dispute. This is not true in this case.

■ Another question in this case is whether the defendants were and are threatening to give publicity to the facts involved in a labor dispute by a method not involving fraud. The handbills distributed by the picketers held out to the public that plaintiff's place of business in the District of Columbia was a branch of and was controlled by Arthur Murray in New York. The plain inference was that plaintiff would be in a position to grant relief to the strikers and that plaintiff was a party to the grievances. In point of fact, she was not. The defendants' giving of publicity by such misleading statements was therefore by a method involving fraud

which is not within the protection of the Norris-LaGuardia Act.

Because of what has been stated, pending final decision of this case, when full opportunity for study by the Court will be possible, the plaintiff should be protected against the injury threatened against her.

██ The parties have agreed and it is apparent that the Taft-Hartley Act 29 U.S. C.A. § 141 et seq., does not grant plaintiff the right to obtain the preliminary injunction sought in this case. The decision of the Court is based on its inherent power to issue injunctive relief which apparently is not withheld by the Norris-LaGuardia Act.

██ So far as the Constitutional provision for free speech is concerned, the controlling decisions of the Supreme Court seem to indicate that defendants should be restricted, so far as their freedom of speech is concerned, to a point within a reasonable radius of the area within which the labor dispute has arisen. In this case the labor dispute is in New York City. The District of Columbia is not within a reasonable radius of this area.

The motion for preliminary injunction will be granted and the Motion to dissolve the temporary restraining order will be denied.