**DIXIE MOTOR COACH CORPORATION v. AMALGAMATED ASS'N OF STREET, ELECTRIC RY. & MOTOR COACH EMPLOYEES OF AMERICA et al.**

Civ. A. No. 296.

District Court, W. D. Arkansas, Texarkana Division.

Dec. 31, 1947.

Biggs & Roberts, Frank C. Biggs and Fowler Roberts, all of Dallas, Tex., and Shaver, Stewart & Jones, Ben Shaver, Ned Stewart and Paul Jones, all of Texarkana, Ark., for plaintiff.

Stein & Stein, Floyd E. Stein and James E. Stein, both of El Dorado, Ark., and Bert B. Larey, of Texarkana, Ark., for defendants.

LEMLEY, District Judge.

This cause coming on to be heard upon the petition of the plaintiff Dixie Motor Coach Corporation for an injunction to prohibit the defendant labor union and certain members thereof from establishing and maintaining a picket line around its bus terminal in the city of Texarkana, Arkansas, the court, at the conclusion of the proceedings filed herein its findings of fact and conclusions of law, as follows:

## Findings of Fact.

1. Plaintiff, Dixie Motor Coach Corporation, is a motor bus common carrier which is duly authorized to do business in Arkansas and is engaged in transporting passengers and their baggage, express and mail in local and interstate commerce. It operates what is commonly known as the "Trailways Union Bus Terminal" in the city of Texarkana, Miller County, Arkansas, in the Texarkana Division of the United States District Court for the Western District of Arkansas, which terminal services busses owned and operated by plaintiff and by the Lone River Bus Line and by the Missouri Pacific Transportation Company's bus line.

2. That the defendant Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America is a duly accredited labor organization and is the bargaining agent for the employees of the Southern Bus Lines, Inc., and that the defendants J. C. Deason, Virgil Roberson, and C. L. Miller are members of Division 1127 of said Association, and that said Association or Union has been such bargaining agent at all times mentioned herein; and that said Deason, Roberson and Miller are agents of said Union.

3. Southern Bus Lines, Inc. is a motor bus common carrier which has its principal office in Alexandria, Louisiana, and maintains and operates terminals in numerous cities, including Texarkana, Arkansas.

4. Southern Bus Lines, Inc. has a contractual arrangement with plaintiff whereby plaintiff collects from Southern Bus Lines, Inc. 10% of all sums derived from sales of tickets made by plaintiff to persons intending to take passage on the latter's line. Except for said commission arrangement, plaintiff has no financial interest in Southern Bus Lines, Inc., and has no control over that company. Southern Bus Line, Inc. has no financial interest in plaintiff and no control over it.

5. After busses of the Southern Bus Lines, Inc. leave their terminal in Texarkana, Arkansas, they stop at plaintiff's terminal to pick up any passengers for said busses who may be found at plaintiff's terminal.

6. Plaintiff's busses do not stop at the terminal of Southern Bus Lines, Inc., and do not take on passengers at said terminal.

7. Brotherhood of Railway Trainmen is the accredited collective bargaining agent of plaintiff's drivers and station attendants; and Brotherhood of Railway Clerks is the accredited collective bargaining agent of the local manager and ticket sellers employed by plaintiff.

8. Defendant union does not represent employees of plaintiff.

9. Brotherhood of Railway Trainmen and the Brotherhood of Railway Clerks do not represent employees of Southern Bus Lines, Inc.

10. No employees of Southern Bus Lines, Inc. work in or about plaintiff's terminal or drive busses operated by plaintiff.

11. No employees of plaintiff work in or about the terminal of Southern Bus Lines, Inc., or drive busses operated by the latter company.

12. In May, 1947, a labor dispute arose between the defendant Amalgamated and Southern Bus Lines, Inc.; said dispute arose over a desire of the union for certain changes in wages and working conditions, and since that time the members of Amalgamated have been and are now on strike against Southern Bus Lines, Inc.

13. Defendants do not seek to represent plaintiff's employees.

14. Defendants do not seek employment by plaintiff for any member of defendant union or for others.

15. Defendants do not seek to alter or affect the terms or conditions of employment of plaintiff's employees.

16. Plaintiff has no authority or power to alter or affect the terms or conditions of employment of the members of defendant union.

17. A picket line is being maintained by defendant union in front of the terminal of Southern Bus Lines, Inc., in the city of Texarkana, Arkansas.

18. Plaintiff's employees and the unions which represent them are satisfied with the contract existing between them and plaintiff, and plaintiff is not involved in

any labor dispute with its employees or with the Brotherhood of Railway Trainmen or the Brotherhood of Railway Clerks.

19. Plaintiff has an arrangement similar to its agreement with Southern, whereby it serves Missouri Pacific Transportation Company and Lone River Bus Line in its terminal in Texarkana, Arkansas. Said Missouri Pacific and Lone River are also carriers transporting passengers and doing business in interstate commerce. All of their employees are likewise members of the Brotherhood of Railway Trainmen and the Brotherhood of Railway Clerks. They likewise have no dispute with their employees, nor with the defendants herein.

20. On or about November 20, 1947, the defendant J. C. Deason, while acting as agent for and on behalf of the defendant union, notified the plaintiff through its station manager, Paul Upchurch, who is a member of the Brotherhood of Railway Clerks, that said union intended to and would establish a picket line around plaintiff's terminal in Texarkana, Arkansas, if the Southern Bus Lines, Inc. continued to stop at the plaintiff's terminal as hereinbefore stated, giving the plaintiff until twelve o'clock noon of that day to bring about discontinuance of the practice.

21. That the defendants herein induced and encouraged plaintiff's employees to notify the plaintiff that they would refuse to cross said picket line if established by defendant union around plaintiff's said terminal.

22. That if said picket line is established, none of the employees of the plaintiff, Missouri Pacific, or Lone River, will cross said picket line.

23. That the evidence in this case establishes that the defendants, in communicating to said Upchurch their threat to establish a picket line around plaintiff's terminal, were attempting to induce and encourage the employees of plaintiff to engage in a concerted refusal in the course of their employment to use, transport, and otherwise handle or work on any goods, articles, materials or commodities, or to perform any services, with the object of forcing the plaintiff to cease doing business with Southern Bus Lines, Inc.

24. Said picket line has not yet been established due to the intervention of this lawsuit, but that the establishment thereof is threatened and is imminent unless enjoined by this court.

25. If said picket line be established, plaintiff will be compelled to close its said terminal in Texarkana, Arkansas, or to cease doing business at said terminal with Southern Bus Lines, Inc.

26. If said terminal is closed, plaintiff will suffer irreparable damage for which it will have no adequate remedy at law; that the remedy of an action in damages provided by Section 303 of the Taft-Hartley Act, 29 U.S.C.A. § 187, is inadequate.

27. That if said terminal is closed, it cannot be determined when it will be reopened, since the strike now on has been in existence for many months and may continue indefinitely, and the flow of interstate transportation and commerce over the lines of the plaintiff, Missouri Pacific, and Lone River, will be seriously disrupted, and the public interest will be inimically affected.

Conclusions of Law.

1. The court has jurisdiction of the parties and of this action.

2. That the actions of the defendants as aforesaid in inducing and encouraging the employees of the plaintiff Dixie Motor Coach Corporation to engage in a concerted refusal in the course of their employment to perform any services for plaintiff with the object of forcing plaintiff to cease doing business with the Southern Bus Lines, Inc., constitute an unlawful act within the meaning of Section 303 of the Taft-Hartley Act, 29 U.S.C.A. § 187.

3. Plaintiff is engaged in an industry affecting interstate commerce.

4. In the event plaintiff is forced to close its terminal as aforesaid, it will be caused to suffer irreparable damage for which it will have no adequate remedy at law.

5. In the event plaintiff accedes to the demands of the defendants as aforesaid, it will be made an unwilling instrumentality whereby an unlawful act is committed, within the meaning of said section of the Taft-Hartley Act.

6. In the event said terminal is closed, the general welfare will be inimically affected, within the meaning of the Taft-Hartley Act, 29 U.S.C.A. § 141(b).

7. The court has inherent power to grant a permanent injunction in this cause.

8. The Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., does not qualify the court's power to grant an injunction in this cause.

9. The inherent power of this court to enjoin the threatened unlawful act involved herein is not qualified by the provisions of the Clayton Act, 29 U.S.C.A. §§ 52, 53.

10. The inherent power of this court to enjoin the threatened unlawful act herein involved is not qualified by the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–113, because the instant case is not one involving or growing out of a labor dispute within the contemplation of said Act.

11. That a permanent injunction should issue herein against the defendants and each of them and their agents, servants, employees, and members of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, enjoining and restraining them and each of them from in any way interfering with the operations of the plaintiff at its Texarkana, Arkansas, bus terminal, and enjoining and restraining them and each of them from establishing and maintaining a picket line around or about said bus terminal.

### Memorandum

The proof in this case shows that the defendant Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, and the defendant J. C. Deason, its agent, advised the plaintiff, Dixie Motor Coach Corporation, about four or five days before the preliminary hearing in this case, which hearing was held on November 21, 1947, that if it continued to allow the busses of Southern Bus Lines, Incorporated, to stop at its terminal in Texarkana, Arkansas, that the Amalgamated would picket said terminal. The defendant Amalgamated and the other defendants in this action have a labor dispute with the Southern, but no labor dispute with the Dixie. The Dixie has no dispute with its own employees, who are represented by the Brotherhood of Railway Trainmen and the Brotherhood of Railway Clerks, but those employees have advised the Dixie that in the event the Amalgamated establishes a picket line at its terminal, they will refuse to cross the picket line, and certain members of those organizations have so testified in this case. This terminal is also used by the Missouri Pacific Transportation Company and the Lone River Bus Line, and these carriers, as well as Dixie, are engaged in the transportation of passengers, baggage, express and mail, in interstate commerce. Neither Missouri Pacific nor Lone River is in any way involved in the labor dispute between Southern and the Amalgamated Association; and their employees likewise are members of the Brotherhood of Railway Trainmen and Brotherhood of Railway Clerks, and there is no labor dispute between these employees and their employers. These employees nevertheless will likewise refuse to cross Amalgamated's picket line if it is established. No employee of Southern is employed in Dixie's terminal.

For approximately seven years Dixie has had a contract with Southern and its predecessor Tri-State Transit Co., under which it is selling tickets over Southern lines, which supplement Dixie's lines, and Southern picks up such passengers at Dixie's terminal. For this service, Dixie receives ten per cent of its gross sales of tickets over Southern lines.

If the picket line is established, Dixie will either have to cease doing business with Southern at the terminal in question, or close the terminal, thereby suffering irreparable damage and seriously interfering with interstate transportation and commerce. Not only will Dixie, Missouri Pacific and Lone River be seriously and irreparably damaged, but the public interest will suffer.

Dixie has brought this action to restrain and enjoin the Amalgamated Association and the other defendants herein from establishing the picket line.

Section 303 of the Taft-Hartley Act, being Section 187, Title 29 U.S.C.A., provides, in part: "It shall be unlawful, for

the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is:—forcing or requiring any employer * * * to cease doing business with any other person."

The threat to establish a picket line around Dixie's terminal was conveyed to Dixie through its station manager, who is a member of the Brotherhood of Railway Clerks, this threat having been conveyed to him by the defendant J. C. Deason, who is a member of the Amalgamated Association, and who was acting for the Association at the time. The Court finds that this threat was made for the purpose of inducing and encouraging the employees of Dixie to engage in a concerted refusal in the course of their employment to cross the picket line to be established by the Amalgamated and to perform any services for Dixie, and that one of the objects thereof was to force or require Dixie to cease to do business with Southern.

This act on the part of the Amalgamated and its agent Deason is expressly declared to be an unlawful act by the section of the Taft-Hartley Act to which I have just referred. It is true that the Taft-Hartley Act does not expressly authorize a United States District Court to issue an injunction prohibiting the commission of such an act; on the other hand, it provides that the injured party may sue for damages resulting from the unlawful act; but the Taft-Hartley Act does not forbid the issuance of an injunction under those conditions; and here we have a situation where an unlawful act is about to be committed which will either require Dixie to become a party to the commission of such unlawful act, or close its terminal and suffer irreparable damage for which the remedy provided by the Act is inadequate, and with resulting damage to the travelling public.

The preamble to the Taft-Hartley Act, 29 U.S.C.A. § 141(b), is as follows:

"Industrial strife which interferes with the normal flow of commerce and with the full production of articles and commodities for commerce, can be avoided or substantially minimized if employers, employees, and labor organizations each recognize under law one another's legitimate rights in their relations with each other and above all recognize under law that neither party has any right in its relations with any other to engage in acts or practices which jeopardize the public health, safety, or interest.

"It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare and to protect the rights of the public in connection with labor disputes affecting commerce."

Thus the defendants are attempting to coerce Dixie to aid them in the commission of an unlawful act in the very teeth of the Taft-Hartley Act.

The defendants contend that this court is prohibited by the Norris-LaGuardia Act, Secs. 101–115, Title 29 U.S.C.A. from issuing an injunction here, by reason of the fact, so they contend, that this is a case involving or growing out of a labor dispute. I do not agree. There is no labor dispute between Dixie and the defendants. The labor dispute is between defendants and Southern, and Southern is not a party to this suit. There is no relief that Dixie is able to give the defendants. Dixie can in no way compel Southern to accede to the demands of the defendant Amalgamated Association with respect to wages and working conditions. Dixie's hands are tied. It is the innocent third party that is to be made an unwilling instrumentality whereby an unlawful act is committed, or required to suffer irreparable damage. The

case is not directly in point, but under analogous circumstances, Chief Justice Bolitha J. Laws of the District Court of the United States for the District of Columbia, held in Gomez v. United Office and Professional Workers of America, CIO, Local 16, et al., on July 31st of this year, 73 F. Supp. 679, that the case under consideration was not one involving or growing out of a labor dispute within the meaning of the Norris-LaGuardia Act, and I cite his opinion as authority for my holding here.

 With respect to defendants' contention that if the injunction is granted, their constitutional right of free speech will be curtailed, and their citation of Bakery Drivers Local v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 818, 86 L.Ed. 1178, and other cases in this connection, it is said in the Wohl case that "One need not be in a 'labor dispute' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive." Here we have no violence, but we do have coercion and oppressive conduct, and also conduct expressly declared to be unlawful by the Taft-Hartley Act.

A permanent injunction will be granted.