## DOUDS v. WINE, LIQUOR & DISTILLERY WORKERS UNION, LOCAL I, et al.

District Court, S. D. New York.

Jan. 28, 1948.

448

Reeves R. Hilton, of Washington, D. C., Jack Davis, of New York City, Winthrop A. Johns, of Washington, D. C., and Paul S. Kuelthau, of New York City, for petitioner.

Poletti, Diamond, Freidin & Mackay, of New York City (Jesse Freidin, of New York City, of counsel), for Schenley Distillers Corp.

Cohen & Burlakoff, of New York City, (Joseph F. Brill, Arnold Cohen, Edward J. Ennis, Harold Krieger, Bernard Burlakoff and Coleman Gangel, all of New York City, of counsel), for respondent.

Rivkin & Rosen, of New York City (Louis Rivkin, of New York City, of counsel), for Jardine Liquor Corp.

RYAN, District Judge.

The petition herein was filed by the Regional Director of the National Labor Relations Board pursuant to the provisions of Section 10(l) of the National Labor Relations Act (the Act) as amended by Chapter 120-80th Congress, 29 U.S.C.A. § 160(l).

Although the Act as amended does not prescribe the procedure to be followed on hearings of this nature, it was felt that the issues should be determined by taking of testimony rather than by the submission of proof by affidavits. Great Northern Ry. Co. v. Brosseau, D.C., 286 F. 414, 416; Aeolian Co. v. Fischer, 2 Cir., 29 F.2d 679, 681. Evidence was presented by the petitioner, the charging parties and the respondent and opportunity for cross-examination of witnesses was afforded to all. The Act does not grant the charging parties the right to appeal. They are "given an opportunity to appear by counsel and present relevant testimony." They were accorded the right of cross-examination and of producing and examining witnesses; their counsel was heard on questions of law, but denied the right to object to the reception of any evidence offered by either petitioner or respondent.

The petition alleges that charges were filed with the National Labor Relations Board by Schenley Distillers Corporation and Jardine Liquor Corporation (sometimes referred to herein as the charging parties), that the charges had been investigated by the Regional Director and that after such investigation, petitioner had reasonable cause to believe said charges were true and that a complaint of the Board, based thereon, should issue against the respondent, Wine, Liquor & Distillery Workers Union, Local 1. Upon the basis of such investigation and the evidence disclosed as a result thereof, it is alleged that petitioner has reasonable cause to believe and believes that Local 1 has and is engaging in conduct in violation of Section 8(b), subsection (4) (A) of the Act, 29 U.S.C.A. § 158(b), (4) (A), and affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, 29 U.S.C.A. § 152 (6, 7).

The particular violation charged is that respondent was conducting a boycott against the charging party, Schenley Distillers Corp., by inducing and prohibiting the members of respondent union in the employ of Jardine Liquor Corp. (one of the charging parties), of McKesson and Robbins, Inc., and of other wholesale liquor distributors from handling Schenley products. It was also alleged that a purpose of the boycott was to aid and assist the employees of the George T. Stagg Company, a wholly-owned subsidiary of Schenley Distillers Corp. located in Frankfort, Kentucky, in the conduct of a strike they were then and had been carrying on and engaged in since November 13, 1947; and that the said employees of George T. Stagg Company were represented by Local 38, Distillery, Rectifying and Wine Workers International Union of America, A. F. of L., a labor organization affiliated with Local 1, respondent herein, through Distillery, Rectifying and Wine Workers International Union of America, A. F. of L., the parent of both local unions.

The prayer of the petition asks that an injunction "issue enjoining and restraining Local 1, its agents, servants, employees, attorneys, and all persons in active concert or participation with it, pending final adjudication of the Board of such matters, from:

"(a) Permitting to continue in effect the strike orders or the orders to refuse to use, transport, handle, or otherwise work on the products of Schenley, issued by it to its members, employees of wholesale dealers in alcoholic beverages in New York City.

"(b) Inducing or encouraging its members, employees of wholesale dealers in alcoholic beverages in New York City, to engage in a strike or a concerted refusal in the course of their employment to use, transport, or otherwise handle or work on goods, articles, materials, or commodities, or perform services, in order to force McKesson & Robbins Incorporated, Jardine Liquor Corporation, and other wholesale dealers in alcoholic beverages in New York City, to cease using, selling, handling, transporting, or otherwise dealing in the products of Schenley Distillers Corporation, either by continuing in effect the aforesaid orders, or by any other means or device."

The answer and amended answer to the petition assert that "work stoppages" at Jardine Liquor Corporation, McKesson and Robbins, Inc., and at other wholesale liquor distributors were conducted by reason of direct and primary labor disputes between those corporations and their employees, who were members of the respondent union; that the "work stoppages" were not the result of any boycott and were not an attempt to exert economic pressure to affect the labor disputes pending at the George T. Stagg Company plant. The amended answer further alleges that the strike at the George T. Stagg Company had ceased and was ended.

During the pendency of this proceeding, two interim decisions were rendered by this Court by opinion. On December 11, 1947 and prior to the hearings on the petition, a temporary restraining order was made; and, on January 8, 1948 after completion of all the testimony offered by petitioner and the charging parties the temporary restraining order was vacated. 75 F.Supp. 184.

The amended act makes it mandatory on the regional attorney or other officer in charge of the matter to apply for temporary injunctive relief, if after investigation, he has reasonable cause to believe that the charge is true and that a complaint should issue. The National Labor Relations Board and its officers have petitioned, as required by law, for injunctive relief for the period it has the charges of the alleged unfair labor practices under consideration and until the final adjudication by the Board of the merits of the charges.

The court has not the benefit of findings of fact of the National Labor Relations Board, as such as accompany a petition for enforcement or review after a cease and desist order. The allegation of the Board, that it has reasonable cause to believe the charges made are true or that substantial and irreparable injury may follow in consequence of the continuance of the alleged unfair practices, is based upon a preliminary investigation only—in this instance without hearing respondent. These statements of the Board, therefore, have no probative value or weight in determining the ultimate issue—whether the relief prayed for should be granted.

The action of the court on this petition for injunctive relief does not result in a final determination of the issues raised by the complaint of the Board and the answer filed by respondent. The power of the court is limited to the granting of such injunctive relief or temporary restraining order "as it deems just and proper," pending the final adjudication of the Board.

Nor, is the Board required to give consideration to, nor is it any way bound or controlled, by, any decision of the court on this petition. It is not intended, therefore, to make any adjudication of the issues involved or to make any findings except in so far as it may be necessary to do so in order to enable the court to decide what injunctive relief is "just and proper" under the facts here presented.

It appeared from the testimony presented on the hearings on this petition that Schenley Distillers Corporation is engaged in the manufacture and sale of whisky and other products at approximately thirty distilleries located throughout the United States of America, including a distillery in Frankfort, Kentucky, operated by the George T. Stagg Company, a wholly-owned subsidiary.

Schenley, in the course of its business throughout the year, makes large and substantial purchases of grains and other manufacturing materials, which flow through interstate commerce, and the amount of such purchases is far in excess of $3,000,000. Schenley manufactures and sells annually products in excess of $15,000,000, and distributes and delivers shipments of the merchandise sold by means of interstate commence throughout the entire country and abroad. It maintains an office within this district from which it sells its products to a large number of distributors, including Jardine Liquor Corporation, McKesson and Robbins, Inc., and numerous other distributors. It was further established, on the hearing, that McKesson and Robbins, Inc., are distributors of liquors, including the products of Schenley, that it maintain an office within this district, that it sells and delivers daily to retailers products of Schenley in excess of $40,000, and that these products are shipped by Schenley in interstate commerce to McKesson and Robbins, Inc. It also appeared that Jardine Liquor Corporation is a distributor of Schenley products and sells and delivers daily to retailers by interstate commerce and that such sales and deliveries daily exceed an average of $40,000.

The George T. Stagg Company, a wholly-owned subsidiary of Schenley, operates a distillery at Frankfort, Kentucky. Its employees are represented by Local 38, a labor organization affiliated with the respondent, Local 1, and from November 13, 1947 until December 15, 1947, when the men of that plant returned to work, they had been engaged in a strike at the aforesaid distillery.

It further appeared that on or about December 4, 1947, respondent Local 1 engaged in, induced and encouraged the employees of McKesson and Robbins, Inc., and Jardine Liquor Corporation and of other dealers in alcoholic beverages to engage in a concerted refusal, in the course of their employ, to handle or otherwise work on commodities which were the product of Schenley, and that one of the objects and purposes sought to be accomplished was to force or require McKesson and Robbins, Inc., and Jardine Liquor Corporation and

other wholesale dealers in New York to cease using and selling products of Schenley.

Particularly, did it appear that on or about December 5, 1947, the warehouse employees of McKesson and Robbins, Inc., members of respondent union, at the direction of their union refused to handle or pack Schenley products, and similarly, on or about December 4, 1947, the same situation prevailed with the warehouse employees of the Jardine Liquor Corporation.

It further appeared, as set forth in the opinion of this court of January 8, 1948, that there had been a definite and distinct change in the factual situation present on December 11, 1947. "The men at the plant of George F. Stagg Company at Frankfort, Kentucky, have returned to work; their difficulties have been adjusted and settled and the terms of a new contract have been agreed upon, only the formal signing of the contract remaining to be done. This is in abeyance and pending only the determination by the Board of a petition filed by a minority of the workers for decertification of the union. Grievances, complaints and differences among all the distributors in the metropolitan area— (through whom the charging party, Schenley, asserts the boycott was imposed)— have been adjusted. This has been accomplished and evidenced by stipulations and agreements signed by the distributors, admitting the existence of such grievances and complaints, in all situations except one—the Jardine Liquor Corporation. In this instance, the respondents did have grievances and differences with the employer, the employer did recognize and adjust them, but refused to sign a stipulation or statement. The members of the respondent union are now at work for all of these employing distributors."

 The issuance of injunctions on petition of the Board, under Section 10(l) of the Act, is designed to authorize speedy relief in cases where unfair labor practices threaten serious harm which may be irremediable under ordinary procedures provided in the Act. When explaining its reason for giving the Board power to seek injunctions, the majority report of the Senate

Committee on Labor and Public Welfare said (Senate Report 105-80th Congress, first session): "Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices."

Consideration of the provisions of Section 10(*l*) of the Act giving the court "jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper," clearly discloses the intention of Congress that the court was to exercise its discretion to fit the needs and circumstances of each particular case.

It has been frequently argued, as here by petitioner and respondent, that statutes similarly worded giving the court jurisdiction to issue injunctions upon the petition of an administrative agency were intended to deprive the court of the exercise of discretion to deny injunctions where past offenses had ceased.

In proceedings instituted under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., these contentions have been rejected and the principles of equity have been applied. It has been held that, in the absence of a probable renewal of violations an injunction is not warranted. Walling v. T. Buettner Co., 7 Cir., 133 F.2d 306; certiorari denied 319 U.S. 771, 63 S.Ct. 1437, 87 L. Ed. 1719; Fleming v. Phipps, D.C., 35 F. Supp. 627. Similarly, injunctions have been held to be improper for past violations of the Securities Act in the absence of a threat of renewal. Security Exchange Comm. v. Torr, 2 Cir., 87 F.2d 446. Finally the jurisdiction granted by Section 4 of the Sherman Act, 15 U.S.C.A. § 4, to enjoin restraints of trade is granted according to equitable principles and injunctive relief is denied where no immediate need for it is present. Appalachian Coals v. United States, 288 U.S. 344, 377, 53 S.Ct. 471, 77 L. Ed. 825; United States v. United States Steel Corporation, 251 U.S. 417, 445, 40 S. Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121; Swift & Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587.

The law applicable is succinctly stated in the opinion of Mr. Justice Douglas in Hecht Co. v. Bowles Price Administrator, 321 U.S. 321, writing at page 329, 64 S.Ct. 587, at page 591, 88 L.Ed. 754:

"A grant of *jurisdiction* to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances. We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made.

"We do not stop to compare the provisions of § 205(a) [50 U.S.C.A.Appendix, § 925 (a)] with the requirements of other federal statutes governing administrative agencies which, it is said, make it mandatory that those agencies take action when certain facts are shown to exist. We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 11 [88 L.Ed. 9]. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. We do not believe that such a major departure from that long tradition as is here proposed should be lightly implied. We do not think the history or language of § 205(a) compel it. It should be noted,

moreover, that § 205(a) governs the procedure in both federal and state courts. For § 205(c) gives the state courts concurrent jurisdiction with federal district courts of civil enforcement proceedings. If is therefore even more compelling to conclude that, if Congress desired to make such an abrupt departure from traditional equity practice as is suggested, it would have made its desire plain. Hence we resolve the ambiguities of § 205(a) in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect. United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211, and cases cited."

The purposes of the Act are clearly and definitely expressed in it. Section 1(b), 29 U.S.C.A. § 141(b). They are specified, among other objects, to be "to promote the full flow of commerce, * * * to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce."

■ The temporary injunctive relief is designed primarily to prevent, not injury which may be sustained by an employer, as such, or by an individual business, but rather that harm which may otherwise befall to the public by reason of unfair labor practices adversely affecting "the full flow of commerce," and hence the "general welfare." This appears from the fact that the Act does not permit private parties to apply for injunctive relief as they might have done prior to Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and from Section 303 of the Act, 29 U.S.C.A. § 187, which makes strikes and boycotts, which are unfair practices under paragraph 8(b) (4), illegal for the purposes of actions for civil damages. This section together with the right to file charges with the Board, provides for remedies granted the employer complaining of an alleged boycott.

There is no present likelihood of substantial and irreparable injury being done to the flow of interstate commerce, general welfare, the charging parties or any one else, pending the final adjudication of the Board. It has been already found so. See opinion of January 8, 1948. 75 F.Supp. 184. An injunction here certainly would not serve as "encouragement of the practice and procedure of free and private collective bargaining."

It should also be noted that the position of respondent is not set forth in an assertion that it was engaged in a boycott against the charging parties and that such conduct was lawful. The respondent denies that it was carrying on a boycott and alleges that the "work stoppages" in the warehouses of the distributors were due to disputes of a primary nature, directly concerned with the distributors and their employees, members of the respondent union.

■ The fact that the acts sought to be enjoined were not stopped until after the filing of the petition herein is not controlling. With the Stagg strike settled and the workers in that plant back to work, there is no reason to fear a renewal of the unfair labor practices which the Board seeks to enjoin. There appears to be no intention on the part of respondent to renew its past acts, Industrial Ass'n of San Francisco v. United States, 268 U.S. 64, 85, 45 S.Ct. 403, 69 L.Ed. 849; the occasion for them no longer exists. There is no need, therefore, for an injunction. Walling v. Shenandoah–Dives Mining Co., 10 Cir., 134 F.2d 395, 397, 398.

■ The prayer of the petition for injunctive relief pending the final adjudication of the Board with respect to the charges now before it is denied.

An order will, however, be made retaining this petition on the docket, with the right of the Director, the Officer of the Regional Attorney to whom the matter may be referred to renew the application for such injunctive relief, if further unfair labor practices of a similar nature are committed by respondents. Hecht Co. v. Bowles, 321 U.S. 321, 328, 64 S.Ct. 587, 88 L.Ed. 754. Settle order on notice.