AMAZON COTTON MILL CO. (NATIONAL LABOR RELATIONS BOARD, Intervener) v. TEXTILE WORKERS UNION OF AMERICA.
No. 5720.

Circuit Court of Appeals, Fourth Circuit.

April 1, 1948.

L. P. McLendon and Thornton H. Brooks both of Greensboro, N. C., and Don A. Walser, of Lexington, N. C., for appellant Amazon Cotton Mill Co.

Mozart G. Ratner, Atty., National Labor Relations Board, of Washington, D.C. (David P. Findling, Associate Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, and Margaret Farmer, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for appellant National Labor Relations Board, intervenor.

David Jaffe, of New York City, and Robert S. Cahoon, of Greensboro, N. C. (Isadore Katz, of New York City, on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit instituted by a labor union against an employer in which it was alleged that the latter had been guilty of an unfair labor practice in refusing to bargain with the union as the representative of the employees, that a strike of the employees had resulted and that they had sustained damage from loss of employment due to the strike. The relief asked was an injunction requiring the employer to bargain with the union and an award of damages. The employer moved to dismiss the suit on the ground that the court was without jurisdiction to grant relief and that, in any event, no claim was stated upon which relief would be justified. The National Labor Relations Board, before which the union had filed a complaint charging the employer with unfair labor practices in refusing to bargain, was allowed to intervene and file a motion to dismiss on the ground that under the law it had exclusive jurisdiction of the matters in controversy. The motions to dismiss were denied and an interlocutory injunction was issued requiring the employer to bargain with the union. Both the employer and the Board have appealed to this court.

The facts may be briefly stated. The union, the Textile Workers Union of America, was certified by the Board in 1943 as the bargaining representative of the employees of the Amazon Cotton Mills Company of Thomasville, North Carolina, and negotiated a wage agreement with that company, which was renewed from time to time and extended until February 28, 1947. In the month preceding the expiration of this agreement, negotiations were conducted looking to its extension and modification; but the union contends that these were not conducted in good faith by the employer. A strike was called on March 3rd and the mill was closed down. Negotiations looking to a settlement of the strike were without result and a complaint charging the employer with unfair labor practices was filed with the Board in March 1947 and is still pending before it. In September 1947 the employer refused to conduct further negotiations with the union, contending that it no longer represented a majority of the employees. In October it began to operate its mill on a part time basis and secured an injunction from a state court restraining the local union of plaintiff and a large number of employees represented by it from interfering with operations. The union thereupon instituted this suit; and the District Judge, finding that the employer had refused to bargain in good faith, entered the orders from which appeal is taken.

We think it clear that the District Court had no jurisdiction of the case. Unless the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., has had the effect of clothing each of the more than two hundred District Judges of the country with the powers over unfair labor practices vested in the National Labor Relations Board, and in addition the effect of virtually repealing the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., limiting the use of injunctions in labor cases, the injunction granted by the lower

186

court cannot be sustained. We do not think that the Labor Management Relations Act was intended to have· or does have that effect.

 Prior to the passage of the Norris-LaGuardia Act of March 23, 1932, 47 Stat. 70, 29 U.S.C.A. § 101 et seq., the use of injunctions in labor disputes had been the subject of much bitter controversy; and the purpose and effect of that legislation was to deprive the federal courts of juris-diction to interfere by injunction with labor disputes except in a very limited class of cases. The jurisdiction of the courts over labor disputes was still further limited by the National Labor Relations Act of July 5, 1935, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., which guaranteed the right of ˙collective bargaining to employees engaged in industry affecting interstate commerce, defined unfair labor practices on the part of employers and set up the National Labor Relations Board to supervise collective bargaining and protect employees in the exercise of rights guaranteed by the Act from unfair labor parctices on the part of their employers. It is perfectly clear, both from the history of the National Labor Relations Act* and form the decisions rendered thereunder, that the purpose of that act was "to establish a single paramount administrative or quasi-judicial authority in connection with the development of federal American law regarding collective bargaining"; that the only rights made enforceable by the act˙ were those determined by the National Labor Relations Board to exist under the facts of each case; and that the federal trial courts were without jurisdiction to redress by injunction or otherwise the unfair labor practices which it defined. H. Rep. No. 447, 74th Cong. 1st Sess. p. 24; S. Rep. No. 573, 74th Cong. 1st Sess. ·p. 15; Agwilines, Inc. v. N. L. R. B., 5 Cir., 87 F.2d 146, 150, 151; Blankenship v. Kurfman, 7 Cir. 96 F.2d 450; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459ʼ, 82 L.Ed. 638; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 58, 58 S.Ct. 466, 82 L.Ed. 646;

Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 265, 266, 60 S.Ct. 561, 84 L.Ed 738; National Licorice Co. v. N. L. R. B., 309 U.S. 350, 362, 365, 60 S.Ct. 569, 84 L.Ed 799.

What was said by the Supreme Court in General Committee v. Missouri K. T. R. Co., 320 U.S. 323, 332, 333, 64 S.Ct. 146, 150, 88 L.Ed 76, with respect to the Railway Labor Act, 45 U.S.C.A. § ·151 et seq., is applicable also to the National Labor Relations Act and the Labor Management Relations Act amending it. The Court said: "On only certain phases of this controversial subject has Congress utilized administrative or judicial machinery and invoked the compulsions of the law. Congress was dealing with a subject highly charged with emotion. Its approach has not only been slow; it has been piecemeal. Congress has been highly selective in its use of legal machinery. The delicacy of these problems has made it hesitant to go too fast or too far. The inference is strong that Congress intended to go no further in its use of the processes of adjudication and litigation than the express provisions of the Act indicate."

 There is nothing in either the text or the history of the Labor Management Relations Act to indicate any departure from this salutary approach to the matter of conferring jurisdiction on the courts in labor controversies. Title I makes amendments to the National Labor Relations Act, some of which define unfair labor practices on the part of labor organizations; but there is no indication of any intention to change the method by which unfair labor practices were dealt with under the act or to · vest the District Courts with jurisdiction as to these matters, except to the limited extent that such jurisdiction was expressly conferred. Under section 10(j₎) of the act, 29 U.S.C.A. § 160(j), the District Courts are expressly given jurisdiction to grant injunctions upon application of · the Board after the latter has issued a complaint charging an unfair labor practice; under section 10(l) they are given jurisdiction to issue injunctions upon application of an offi-

---

* The bill as originally drafted contained a provision granting concurrent jurisdiction to the Labor Board and the District Courts to prevent unfair labor practices; but this provision was deleted by committee amendment on the floor of the Senate. 79 Cong.Record 7651, 7652.

cer or regional attorney of the Board in certain cases involving jurisdictional strikes and secondary boycotts; under section 208, 29 U.S.C.A. § 178, they are authorized to issue injunctions notwithstanding the provisions of the Norris-LaGuardia Act in certain cases involving strikes and lockouts affecting interstate commerce and imperiling the national health and safety, but only upon petition of the Attorney General following a report of a board of inquiry and direction by the President; and under section 303, 29 U.S.C.A. § 187, they are given jurisdiction of suits for damages arising out of jurisdictional strikes and boycotts. In no-other cases does the act confer jurisdiction upon the District Courts to deal with unfair labor practices; and it is hardly reasonable to suppose that Congress intended the District Courts to have general power to grant injunctive relief, at the suit of either unions or employers, with respect to any unfair labor practice that might exist, while limiting with such meticulous care the cases in which those courts might grant injunctive relief upon petition of the Labor Board or the Attorney General acting under the direction of the President. Expressio unius est exclusio alterius

 It is argued that, since section 10(a) of the National Labor Relations Act provided that the power of the Board to prevent persons from engaging in unfair labor practices should be exclusive, and since this provision was omitted from section 10(a) of the Labor Management Relations Act, it was intended that persons aggrieved by unfair labor practices should have the option to appeal either to the Board or to the courts for protection. As pointed out above, however, a remedy in the courts not expressly given is not to be inferred; and especially is this true where Congress has worked out elaborate administrative machinery for dealing with the whole field of labor relationships, a matter requiring specialized skill and experience, and has provided for the handling of unfair labor practices by an administrative agency equipped for the task. The change in the statute upon which reliance is placed was clearly intended, not to vest the courts with general jurisdiction over unfair labor practices, but to recognize the jurisdiction vested in the courts by section 10, subsections (j) and (l), section 208, and section 303, to which we have heretofore made reference, as well as the power in the Board, conferred by the proviso in section 10(a) to cede jurisdiction to state agencies in certain cases. This is not only the clear meaning of the statute when its language is considered in the light of existing law, but it is also the meaning given it by the Conference Committee of the House and Senate (See H. R.No. 510, June 3, 1947). In that report, the Conference Committee explained the change made in the statute as follows:

"The House bill omitted from section 10 (a) of the existing law the language providing that the Board's power to deal with unfair labor practices should not be affected by other means of adjustment or prevention, but it retained the language of the present act which makes the Board's jurisdiction exclusive. The Senate amendment, *because of its provisions authorizing temporary injunctions enjoining alleged unfair labor practices and because of its provisions making unions suable*, omitted the language giving the Board exclusive jurisdiction of unfair labor practices, but retained that which provides that the Board's power shall not be affected by other means of adjustment or prevention. The conference agreement adopts the provisions of the Senate amendment by retaining the language which provides the Board's powers under section 10 shall not be affected by other means of adjustment. The conference agreement makes clear that, when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies." (Italics supplied).

The last sentence of the quotation does not mean, of course, that a general remedy in the courts was being given by the act, but merely that an option existed where a remedy in the courts was given by the act, or existed otherwise.

 Contention is made that jurisdiction is vested in the District Court by section 301(b) of the act, 29 U.S.C.A. § 185(b), providing that a labor organization may sue or be sued in the courts of the United States "as an entity and in behalf of the employees whom it represents"; but the purpose and

188

effect of this provision was manifestly to make clear the capacity of labor organizations to come or be brought into court as parties (Cf. Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4. Cir., 148 F.2d 403), not to enlarge the class of cases of which the District Courts were given jurisdiction. The difference between such a provision and one conferring jurisdiction is. well illustrated by comparison of 301(b) of the act with 301(a), the latter of which confers on the District Courts jurisdiction of suits between employers and labor organizations for violation of contracts. Another provision conferring jurisdiction on the District Courts is section 303(b) of the act, which authorizes them to entertain suits for damages on account of the strikes and boycotts made unlawful by section 303 (a). There would, of course, have been no reason for the enactment of either section 301(a) or section 303(b), if the effect of section 301(b) was to vest in the federal courts general jurisdiction of suits by or against labor unions.

 There is nothing in the history of the act, the reports of committees or the debates in Congress which even vaguely supports the contention that its effect was to vest jurisdiction in the District Courts to grant relief against unfair labor practices. Everything said by anyone remotely bearing on the matter is to the contrary. Thus in proposing the provision which finally became section 10(j) of the act, Senator Morse said (93 Cong.Rec.1912):

"My proposal would in no way impair the legitimate rights of labor under the Norris-LaGuardia Act and the Clayton Act [15 U. S.C.A. § 12 et seq.], since I do not propose that employers be allowed to obtain injunctions against labor or that unions and their members be subjected to the drastic civil and criminal penalties that could be applied in days gone by."

The Senate Report (S.Rep.No. 105 on S. 1126 p. 8) said with respect to sections 10(j) and 10(l):

"After a careful consideration of the evidence and proposals before us, the committee has concluded that five specific practices by labor organizations and their agents, affecting commerce, should be defined as un-

fair labor practices. Because of the nature of certain of these practices, especially jurisdictional disputes, and secondary boycotts and strikes for specifically defined objectives, the committee is convinced that additional procedures must be made available *under the National Labor Relations Act* in order adequately to protect the public welfare which is inextricably involved in labor disputes.

"Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the *Board, acting in the public interest and not in vindication of purely private rights,* may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." (Italics supplied).

During the course of a debate on an amendment offered by Senator Ball, which would have permitted employers to secure injunctions in District Courts against jurisdictional strikes and secondary boycotts, Senator Ellender inquired of him whether it was not true "that all the unfair labor practices covered by the bill, whether against management or labor, are processed through the Board." Senator Ball answered "Yes, of course." Senator Ellender then inquired whether "the Senator would be willing to permit a union to go into court to seek redress in the case of an unfair labor practice on the part of management," and Senator Ball answered "No." 93 Cong. Rec. 5040.

In opposing this amendment, Senator Ives said (93 Cong.Rec. 5041):

"It has been pointed out that possibly the unfair labor practice procedure might not be so effective as the direct injunction obtained by the employer. To some extent, perhaps, it would not be. Perhaps there would not be the immediate action obtainable by injunction, but by and large, the en-

tire suggested procedure is intended to deal with the National Labor Relations Act. The provisions with respect to jurisdictional disputes and with respect to secondary boycotts, which are met by a statutory denial, deal fundamentally with the National Labor Relations Act. In effect, such boycotts and strikes would constitute violations of that act, if indeed they would not actually violate other laws. The remedy should be found in procedures under the National Labor Relations Act. So I say that if there should be a slight delay—and I do not think there would be, once the system is established—but if there should be a slight delay, the right approach is through the provisions of the committee bill without opening the door to abuses which formerly existed and which resulted in the passage of the Norris-La-Guardia Act. I have stated my second reason for opposing the amendment offered by the Senator from Minnesota."

Senator Ball's amendment was rejected and Senator Taft then introduced the amendment which became section 303 authorizing suits for damages on account of jurisdictional strikes and secondary boycotts. Fear was expressed by Senator Morse that this might give rise to the granting of injunctive relief in these cases (but not generally) to which Senator Taft replied (93 Cong.Rec. 5074) :

"Let me say in reply to the Senator or anyone else who makes the same argument, that that is not the intention of the author of the amendment. It is not his belief as to the effect of it. It is not the advice of counsel to the committee. Under those circumstances I do not believe that any court would construe the amendment along the lines suggested by the Senator from Oregon."

It is hardly thinkable that, if the effect of the Labor Management Relations Act was to make a fundamental change in the jurisdiction to deal with unfair labor practices, this important fact would not have dawned upon some member of the House or the Senate and have been referred to in the course of the lengthy debate of a measure that was passed over a Presidential veto. That no such suggestion was made gives ample support to the interpretation which, as we have already indicated, we should place upon the text of the act if the history of its passage and the Congressional debates were not available to us. It is interesting to note that the same interpretation has been placed upon it by Mr. Van Arkel, former General Counsel of the Labor Board, who analyzed the act for the Practising Law Institute. He says at p. 63-64 of his analysis :

"The legislative history, as has been indicated passim, seems entirely clear that injunctive relief on petition of private parties is not contemplated under the Act. There is a possible exception, in that section 302 (a) [29 U.S.C.A. § 186(a)], dealing with restrictions on payments to employee representatives, in section 302(e) grants power to the district courts 'to restrain violations of this section' without regard to the Norris-LaGuardia Act or sections 6 and 20 of the Clayton Act [15 U.S.C.A. § 17, 29 U.S.C.A. § 52]. This power is clearly limited to section 302 and hence could be exercised only in the case of violations of the health and welfare and check-off provisions of the Act".

The only court decision directly in point which has been called to our attention is one by Judge Hanson of the Superior Court of Los Angeles County, California, in Gerry of California v. International Ladies Garment Workers Union, 21 L.R.R.M. 2209, which supports the conclusion we have stated, although Dixie Motor Coach Corp. v. Amalgamated Association etc, D.C., 74 F.Supp. 952, involved the granting of an injunction against a secondary boycott for which section 303(b) of the act provided an action for damages. Pertinent as containing language supporting our conclusion here are the decisions in the Southern District of New York Douds v. Wine, Liquor & Distillery Workers Union, D.C., 75 F.Supp. 447, and Fitzgerald v. Douds, D.C., 76 F. Supp. 597, where Judge Medina, in denying the motion of a union for an injunction to stay the Labor Board from proceeding to conduct a representation hearing because of an existing contract with a certified union, said :

"This conclusion finds further support in the general scheme of the statute which seems not to contemplate interference by the District Courts by way of review or otherwise in connection with the normal proceed-

190

ings of the Board. It would be strange indeed if, prior to such time as the Board made any decision or determination and when it was doing no more than starting a hearing to inquire into the facts, a litigant, fearful that the Board might in the end reach a conclusion detrimental to his interests, could hamstring the entire proceeding by an application to the District Court for an injunction."

What is said by Judge Medina in the above quotation suggests an added reason for the conclusion at which we have arrived, i. e. the consequences which would necessarily flow from a construction of the act which would vest in the District Courts coordinate jurisdiction with the Labor Board over unfair labor practices, with power to restrain such practices at the suit of employers or labor unions, consequences which would be as disastrous to any successful administration of the labor law as they would be repugnant to the orderly administration of justice. If labor unions are permitted to invoke the injunctive process of the courts under the act, so also are employers. If they may invoke jurisdiction of the courts where they themselves have appealed to the Labor Board, they may invoke it where their adversaries have appealed to that Board. It would follow, therefore, that upon the beginning of a proceeding before either the Board or a court, the party proceeded against could, and probably would, begin a proceeding in the other tribunal. More than two hundred local tribunals of general jurisdiction would be clothed with the special jurisdiction now vested in a unified agency with nationwide jurisdiction over labor controversies; and it is not difficult to forsee the confusion that would necessarily result. Certainly the statute should not be given an interpretation which would lead to such consequences.

One other absurdity which would result from holding that the District Courts have jurisdiction in such cases should be mentioned. Congress was at great pains to provide that the Board should not issue a complaint upon a charge of unfair labor practice made by a labor union, unless the union should have on file with the Board the financial statements and the affidavit that its officers were not affiliated with the Communist Party, as required by the act. Sec. 9, subsections (f), (g) and (h), 29 U.S.C.A. § 159 (f,g,h). There would have been no reason in this provision, if the union were free to seek relief from the courts without filing the statement or affidavit.

A consideration of the effect and consequences of an interpretation of the act which would give District Courts coordinate jurisdiction with the Board to redress unfair labor practices, as well as a consideration of its reason and spirit, and the history of its enactment, therefore, support what we regard as the reasonable interpretation of its language when considered alone, viz., that it was not intended to vest and does not vest jurisdiction in the District Courts in cases of this sort.

▮▮▮ We do not mean to say that unusual cases may not arise where courts of equity could be called upon to protect the rights of parties created by the act. Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; A. F. of L. v. N. L. R. B., 308 U.S. 401, 412, 60 S.Ct. 300, 84 L.Ed. 347. What we have here, however, is not an unusual case calling for the exercise of extraordinary jurisdiction, but an ordinary unfair labor practice case involving alleged refusal to bargain. For such a case, the plaintiff has been provided an adequate administrative remedy before the Labor Board; and certainly the extraordinary powers of a court of equity may not be invoked until this administrative remedy has been exhausted. Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 4 Cir. 91 F.2d 730, 731, affirmed 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646.

▮▮▮ For the same reason that plaintiff may not maintain the suit for injunction to restrain the unfair labor practice, it may not maintain the action to recover damages on account thereof. Recompense of lost wages on account of an unfair labor practice is a matter for the labor board. See Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; International Union etc. v. Eagle Picher Co., 325 U.S. 325, 340, 65 S.Ct. 1166, 89 L.Ed. 1649; Wallace Corp. v. N. L. R.

B., 4 Cir. 159 F.2d 952. The decree appealed from will accordingly be reversed with direction to the lower court that the case be dismissed.

Reversed and remanded with directions.