## UNION FRATERNAL LEAGUE OF BOSTON v. JOHNSTON.

1. Where the constitution of a benefit society declared that "No suit shall be brought against this order without first referring the matter to the Grievance Committee," with right of appeal to the "Cabinet" and from them to the "Annual Congress," a suit by a member on a claim for a "sick benefit" could not be maintained without first exhausting the remedies so prescribed; especially in the absence of a valid reason for not so doing.

2. Where a member of such a society expressly agreed to comply not only with the constitution, laws, and rules thereof in force at the time of the issue of his certificate, but also with such as might thereafter be adopted, it was error for the court, on the trial of an action against the society, brought by such member on a claim for a "sick benefit," in which the defense was set up that the plaintiff had not followed the procedure prescribed by the constitution and by-laws of the society, to charge that the plaintiff was bound only by the constitution and by-laws in force when his certificate was issued.

3. A ground for the dismissal of an appeal in the superior court, which was not there raised and insisted upon, can not be successfully urged in the Supreme Court as a reason for the affirmance of the judgment rendered in the superior court in the case on appeal.

Argued October 10,—Decided November 20, 1905.
Rehearing denied March 3, 1906.

Appeal. Before Judge Hammond. Richmond superior court. June 3, 1905.

Johnston sued the Union Fraternal League of Boston, Massachusetts, in a justice's court, for $100, on a "sick or benefit claim,"

under a benefit certificate issued to him by the defendant. From a judgment against the defendant, in the justice's court, it appealed to the superior court, where a verdict was rendered against the defendant; and its motion for a new trial having been overruled, it excepted. The defendant resisted the plaintiff's action, on the ground that he was not entitled to sue, for the reason that he had not exhausted his remedies under the constitution and by-laws of the order, by which it was contended he was bound under his certificate. On the trial in the superior court the following facts appeared. The certificate was issued to the plaintiff July 12, 1898, and expressly stipulated that it was issued on condition "that said member . . complies with the constitution, laws, and rules now governing or that may hereafter be enacted for the government of the order;" and that "All benefits during life [were] payable to the member, . . in accordance with and under the provisions of the laws governing said fund of the order upon satisfactory evidence, to the officers of the order, of the accruing of any benefit hereunder." Article 11, section 3, of the constitution of the order, as amended by its "Annual Congress" of 1900, declares that no sick or disability benefits will be allowed for certain diseases, among them eczema, if contracted prior to the issue of the certificate. Section 8 of the same article is as follows: "In case of contention as to any claim by virtue of sickness or accident, in any class granting benefits for the same, the matter shall be referred to the Committee on Arbitration for adjustment. No suits will be allowed on sick or disability claims. Likewise, in case of contention upon any other point of membership involving any financial benefit, the Committee on Arbitration shall adjust the differences." By section 2 of article XII it is declared: "No suit shall be begun against this order without first referring the matter to the Grievance Committee; and if its action be objected to by either party, an appeal can be taken to the Cabinet, and from thence to the Annual Congress. Until this action is resorted to, no member, or beneficiary of a member, shall be entitled to proceed at common law against the order, and it shall be deemed a sufficient answer on the part of this order that the member or beneficiary has failed to comply with these laws to dismiss his action and compel him or her to proceed as herein provided. Provided, however, that in no case shall the tribunals of this character, except in the matter of

sick or accident benefits, preclude bringing suits after such appeal be taken if decided adverse to the claimant." The plaintiff testified: "I continued my payments in it [the league] for some time after my illness, for which they declined to pay me. . . I sent on proper notice of this claim, filled out proper papers and blanks, and forwarded them. So did my physician. I had eczema and was disabled for ten weeks, was entitled to ten dollars a week. They did not pay me, but wrote me that under their by-laws they were not liable, referring me to a certain section of their by-laws. They refused to pay me, saying they were not liable for eczema. (Witness here identified a letter to him, dated July 18, 1904, from James F. Reynolds, Cabinet Secretary of the League.) . . I did not appeal to the grievance committee. I think, when I first wrote the league, they notified me they had not received any certificate from the doctor. I then had doctor fill out one and he sent it off. Still there was delay. I wrote them again and then got this letter [referring to letter already identified] declining to pay. They had paid me before for the same disease; and I thought they would pay me this time." B. D. Lester testified, that he was treasurer of the local chapter, in Augusta, Georgia, of the defendant league, and that no change was made in the sick benefits under the constitution of the league of 1904, "only an increase in the assessments." The letter which the plaintiff testified he had received from the "Cabinet Secretary" of the defendant league was dated July 18, 1904, addressed to the plaintiff, and was in the following language: "In response to your letter of inquiry of the 12th inst., regarding your claim, I wish to call your attention to the fact that we have not received the affidavit of your attending physician. Hence why no action has been taken on your claim. We sent him a blank the same day that your own blank was sent out, and this paper has never been returned to us. I also wish to call your attention to the fact that the nature of your disease is eczema, and, under the provisions of article XI, section 3, of the constitution and laws, we are prohibited from paying benefits for eczema."

*Charles P. Pressly*, for plaintiff in error.

*Austin Branch* and *C. Henry Cohen*, contra.

FISH, C. J. (After stating the facts.) 1. A member of a benefit society must, in applying for benefits under its by-laws, follow

the procedure therein prescribed. It is a well-settled rule, that, before resorting to the civil courts for redress, a member must exhaust all the remedies provided by the society by appeal or otherwise. Bacon, Ben. Soc. & Life Ins. §94. In *Harrington* v. *Workingmen's Benevolent Association,* 70 *Ga.* 340, it appeared that the by-laws of the association provided, that no claim for benefit would be received or acted on except through the sick committee and on a doctor's certificate furnished it; that twelve members should be annually appointed by the president as a grievance committee, with power to try all complaints brought to their notice, from whose decision there should be no appeal. It was held that such by-laws were not contrary to law, and a member could only avail himself of the rights to be enjoyed in the way and manner provided by such rules; and that the furnishing of a doctor's certificate to the sick committee was a prerequisite to receiving a benefit under a claim for sickness. In rendering the opinion, Mr. Justice Crawford said: "Among the objects of the organization of this benevolent association, it is evident that the mutual aid to be rendered to the members thereof by the observance of self-imposed duties and obligations was among the most important. It was to be a brotherhood of workingmen; governed, managed, and controlled by its own membership, under its own laws, without extrinsic compulsion. Its operations for the execution of its benevolent designs were to be internal, and by persons of its own appointment; provision was made to accomplish all the ends in view; there was nothing in any of its laws prohibited by statute or constitution; hence, whosoever became a member could not avail himself of the rights to be enjoyed in that way and manner provided by its own rules." Leave was granted to the defendant in error to review that case; and after a careful consideration of the same, we are of opinion that the ruling therein made should be adhered to. In the present case, it appeared from the contract between the plaintiff and the defendant league, as shown by the certificate issued to him, that he agreed to comply with the constitution, laws, and rules of the league in force at the date of the certificate, and also those that might thereafter be enacted for the government of the league. The constitution required that in case of contention as to any claim by virtue of sickness, the matter should be referred to the committee on arbitration, for adjustment, and provided that no suit should be brought

against the league without first referring the matter to the griev-
ance committee, with right of appeal to the cabinet and from thence
to the annual congress. The plaintiff admitted that he had not
followed this prescribed procedure; that he had never even appealed
to the grievance committee. He sought to relieve himself from
the necessity of so doing by showing that the defendant had abso-
lutely denied any liability on his claim. Granting that such denial
on the part of the defendant would amount ·to a legal excuse for
the plaintiff's failure to exhaust the remedies prescribed by the
constitution and by-laws of the league, we think that the evidence
shows that he wholly failed to prove his contention as to such de-
nial of liability. It is true that he, in general terms, testified:
"They refused to pay me, saying they were not liable for eczema."
But he also testified: "I think when I first wrote the league, they
notified me' that they had not received any certificate from the doc-
tor. `I ·then had doctor fill out one and he sent it off. Still there
was delay. I wrote them again, I think, and then got this letter
[referring to the letter above quoted from the "Cabinet Secre-
tary"], declining to pay." By reference to this letter it will be
seen that the secretary stated that no action had been taken on the
plaintiff's claim, because no affidavit of his attending physician
had been received, though proper blank for such affidavit had been
sent him. The letter also called the attention of the plaintiff to
the fact that the nature of his disease was eczema, and that under
article XI, section 3, of the constitution and laws, the league did
not pay benefits for eczema. The article and section of the con-
stitution referred to declared: "Nor· will sick and disability bene-
fits be allowed for the following diseases or complaints, if con-
tracted prior to the issue of the certificate: rheumatic, gouty, or
neuralgic diseases, eczema," and other named diseases. The secre-
tary expressly called the attention of the plaintiff to this article
and section of the constitution, a casual examination of which would
have shown him that it was only where eczema had been contracted
prior to the issuance of the certificate that a member was debarred
from a sick benefit on account thereof. The plaintiff was evidently
aware of this, for he testified: "They had paid me before for the
same disease; and I thought they would pay me this time." From
the foregoing we think it clear that the verdict was without evi-

dence to support it, and that for this reason the court should have granted a new trial.

Whether benefit societies, or associations of like character, may create tribunals for the final and conclusive settlement of contro-versies arising under their contracts of membership, or their con-tracts of insurance, is a question upon which the authorities do not agree, some courts holding that they may, and others that they may not. Niblack, Acc. Ins. & Benef. Soc. §49. In the case under consideration, we do not deem it necessary to decide the validity of the provision of the constitution of the defendant league declaring that "No suits will be allowed on sick or disability claims." What we do decide is, that, under the evidence, the plaintiff bound himself to comply with the prescribed procedure for the collection of his claim before bringing suit thereon, and that he failed to do so without legal excuse.

2. The court instructed the jury that "the by-laws and constitu-tion that were in effect at the time Mr. Johnston became a member of this fraternal society are the by-laws and constitution alone which are binding upon him, and that any adopted thereafter are not binding upon him." This charge was erroneous, as Johnston, when his certificate was issued, agreed to comply not only with the constitution, laws, and rules then governing the order, but with all that might thereafter be adopted for its government. Under such agreement, he was bound to comply with the procedure prescribed for the collection of sick benefits, even though such procedure was prescribed by amendment to the constitution or by-laws subse-quently to the date of his certificate.

3. It appears from the record that B. D. Lester, the sole surety on the appeal bond given by the Union Fraternal League, was the garnishee in a garnishment proceeding founded on the case under consideration. No objection was raised in the superior court by Johnston, the appellee in that court, as to the sufficiency of the bond, nor was any ruling there invoked as to that matter. In this court counsel for Johnston, for the first time, raises the question as to the sufficiency of the appeal bond, and contends that the judgment of the superior court rendered in the case should be affirmed for want of a sufficient appeal bond. We are clear that the contention is without merit. Counsel cites, as authority for his contention, the case of *McMurria* v. *Powell*, 120 *Ga.* 766. The rul-

ing made in that case is obviously not in point here. That was a claim case tried in a justice's court and there decided against the claimants, who appealed to the superior court. The sole surety on the appeal bond was the same person as the surety on the claim bond. For this reason, the appellee moved in the superior court to dismiss the appeal, contending that no proper appeal bond had been given. This motion was overruled, and upon a review of such ruling it was reversed by this court, upon the ground that the plaintiff in execution had no additional security on the appeal bond, as the surety on it was the same as the surety on the claim bond.

*Judgment reversed. All the Justices concur.*