WILLIAMS *et al. v.* CEDARTOWN TEXTILES INC.

No. 17661. ARGUED NOVEMBER 13, 1951—DECIDED JANUARY 14, 1952— REHEARING DENIED JANUARY 29, 1952.

*Poole, Pearce & Hall, J. R. Goldthwaite Jr., Thos. S. Adair, Robert S. Cahoon, Cecil Franklin* and *Edwin Pearce,* for plaintiffs in error.

*Henry A. Stewart* and *Frank A. Constangy,* contra.

WYATT, Justice. ■ In so far as the facts are concerned, we deem it enough to say that the evidence was sufficient to authorize the trial judge to find that all the plaintiffs in error had violated the provisions of the restraining order, and that those who were not named as defendants in the petition and served with a copy of the same were cognizant of the terms of the restraining order.

■ The remaining question presented by the record in this case is whether or not the judgment denying the plea to the jurisdiction was error. It is contended that the National Labor Relations Act as amended by the Labor-Maanagement Relations Act of 1947 (29 U.S.C.A. 141-188) deprives the State courts of jurisdiction of this controversy. The contention is that "the court was without jurisdiction to grant the restraining order upon the original and amended bill for an injunction, for the

reason that the same was a matter of substance as to which the Congress of the United States had assumed and granted exclusive jurisdiction to the National Labor Relations Board by the enactment of the Taft-Hartley Act, thus pre-empting the field of regulation of labor relations in interstate commerce to the exclusion of the exercise of any jurisdiction in said field by the State or its governmental arms."

The provisions of the Federal Statute relied upon to sustain this position are as follows: "Section 7. Rights of Employees.— Employees shall have the right to . . engage in . . concerted activities . . and shall also have the right to refrain from any or all of such activities . . " *29 U.S.C.A. 157.*

"Section 8 (b). Unfair Labor Practices.—It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (a) employees in the exercise of the rights guaranteed in section 7 . . " *29 U.S.C.A. 158 (b) (1).*

"Section 10 (a). The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in Section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise . .

"Section 10 (b). Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect . .

"Section 10 (j). The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States . . for appropriate temporary relief or restraining order. Upon the filing of any such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." *29 U.S.C.A. 10 (a), (b), and (j).*

"Section 2. (13) Agent.—In determining whether any person is acting as an agent of another person so as to make such other person responsible for his acts, the question of whether the

specific acts performed were actually authorized or subsequently ratified shall not be controlling." *29 U.S.C.A. 152 (13).*

"Jurisdiction of District Courts: The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . " *28 U.S.C.A. 1337.*

It will be noted that the language used, in so far as the right of the Board to prevent unfair labor practices is concerned, is that "the Board is empowered." In so far as the right of the Board to apply to the Federal courts for an injunction is concerned, the language used is, "the Board shall have power." The language used purports to do no more than to give the Board the power to act in the event the Board so desires. It is nowhere made the duty of the Board to take action; neither does the language purport to give to the Board exclusive power to act. On the contrary, the language used in section 10 (a) above quoted, to wit, "This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise . . ", clearly indicates to our minds that the Congress did not intend to give to the Board exclusive power to act in these matters, in so far as the protection of lives and property is concerned. This view is fortified by the fact that section 10 (a) above quoted, prior to the amendment of 1947, contained the word "exclusive", and that the 1947 amendment dropped from the language used the word "exclusive." It is well-settled law in all jurisdictions that there may be concurrent remedies for a wrong. The Congress clearly indicated its intention to leave in existence the inherent, undelegated, concurrent power of the States under their police power to protect the property and lives of its citizens by the exercise of the equity jurisdiction of its courts.

It is insisted that the language used in the Taft-Hartley Act, supra, to wit, "Provided, that the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry . . even though such cases may involve labor disputes affecting commerce . . ", means that State courts do not have jurisdiction of a controversy such as is here involved unless and until the Board provided for in the Taft-Hartley Act has ceded juris-

diction to the State. We can not agree with this contention. In the first place, courts of the several States are not agencies of the State, but are an integral part of the State government. And, in the next place, the State courts in the very nature of our system of government, in the exercise of equity jurisdiction, have the inherent power to protect the lives and property of its citizens; and the Supreme Court of the United States has many times said that this inherent power is dependent upon no statutory enactment. It is our view that this provision of the act simply means that the Board may, if it so desires, delegate such powers as it has to a similar or like State agency where States have created such boards or agencies.

The relief sought and granted in the instant case in no way prevents collective bargaining, or the right to picket peacefully. All that was sought, and all that was done was to protect life and property against unlawful acts. The acts alleged and proved and enjoined were, among others, the turning over of automobiles attempting to enter the premises of the textile plant; throwing rocks through the windows of automobiles entering the premises, thereby inflicting physical injury upon the occupants thereof; violence to those who attempted to enter; actual violence to individuals on the public streets; shooting into the homes of individuals; and other equally reprehensible acts. Can it be said that a sovereign State, acting through its courts of equity, does not have the power to protect its citizens against this kind of conduct, whether it be perpetrated by the members of a labor union, the employer, or anybody else? We do not think so. The inherent police power of the States to protect the persons and property of their citizens against such unlawful conduct has never, and we trust never will be, delegated to the Federal Government. We do not believe that any stretch of the imagination can construe the Commerce Clause of the Constitution of the United States to have this effect. If so, the day of sovereign States is a thing of the past. As above stated, we do not think that the Congress intended any such result from the act of Congress here under consideration. It is our opinion that, even if Congress should undertake to enact legislation to accomplish this result, it would be without constitutional authority.

In the case of International Union *v.* Wisconsin Employment

Relations Board, 336 U. S. 245 (69 S. Ct. 516, 93 L. ed. 651), the facts under consideration were not identical with those in the instant case, but the principle of law there announced is here applicable. The Supreme Court of the United States there said: " . . as to coercive tactics in labor controversies, we have said of the National Labor Relations Act what is equally true of the Labor Management Relations Act of 1947, that 'Congress designedly left open an area for state control' and that the 'intention of Congress to exclude States from exercising their police power must be clearly manifested.' . . While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal—even if the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states. In this case there was also evidence of considerable injury to property and intimidation of other employees by threats and no one questions the State's power to police coercion by those methods." See also Duplex Printing Press Co. v. Deering, 254 U. S. 443 (41 S. Ct. 172, 65 L. ed. 349); Giboney v. Empire Storage & Ice Co., 336 U. S. 490 (69 S. Ct. 684, 93 L. ed. 834); Hughes v. Superior Court of California, 339 U. S. 460 (70 S. Ct. 718, 94 L. ed. 985); Building Service Employees International Union v. Gazzam, 339 U. S. 532 (70 S. Ct. 784, 94 L. ed. 1045); Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U. S. 287 (61 S. Ct. 552, 85 L. ed. 836).

The plaintiffs in error rely upon International Union v. O'Brien, 339 U. S. 454 (70 S. Ct. 781, 94 L. ed. 978), and Amalgamated Association of Street Employees v. Wisconsin Employment Relations Boards, 340 U. S. 383 (71 S. Ct. 359, 95 L. ed. 383). In each of these cases, the Supreme Court of the United States simply struck down a State statute directly in conflict with the provisions of the Taft-Hartley Act. We have no such question here presented.

We make no attempt to cite and discuss the decisions of the various State courts on the question here involved, other than to say that all of the State supreme court decisions we have been able to find conform to the ruling here made.

From what has been said above, it follows that the judgment of the trial judge here under attack must be affirmed.

*Judgment affirmed. All the Justices concur.*