35596.   COLLINS *v.* MERRITT-CHAPMAN & SCOTT *et al.*

Decided April 18, 1955.

*Jesse T. Edwards,* for plaintiff in error.

*H. B. Edwards, Sr., H. B. Edwards, Jr., J. Lundie Smith, H. C. Eberhardt,* contra.

GARDNER, P. J. 1. The correctness of sustaining the general demurrers by the court is dependent upon the provisions of the National Labor Relations Act as found in 29 U. S. C. A. §§ 158, 160. If this act preempts the State courts of jurisdiction, as set out in the allegations of the petition, the sustaining of the demurrers is without error, otherwise not. 29 U. S. C. A. § 160, as amended, reads in part as follows: "(a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in Section 158)

affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise."

Unquestionably the activity of the employer defendant constitutes what is defined as "affecting commerce", and therefore is subject to the provisions of the National Labor Relations Act, 29 U. S. C. A. § 152 (7), which reads: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." See, in this connection, N. L. R. B. *v.* Austin Co., 165 Fed. 2d 592. If the employer defendant engaged in any unfair labor practice towards the plaintiff, the remedy was before the National Labor Relations Board, as set out in 29 U. S. C. A. § 151 et seq., and not before the Superior Court of Lowndes County. In Garner *v.* Teamsters, Chauffeurs and Helpers Local Union, 346 U. S. 485 (74 Sup. Ct. 161, 98 L. ed. 228), the following is said by the United States Supreme Court: "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. Indeed, Pennsylvania passed a statute the same year as its labor relations act reciting abuses of the injunction in labor litigations attributable more to procedure and usage than to substantive rules. A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the Federal Board, precludes state courts from doing so."

The subject is extensively dealt with in Born *v.* Laube, 213 Fed. 2d 407, 409, in the following language: "Thus the sole problem posed is whether the existence of jurisdiction in the Labor Board precludes the entertainment of the suit by the district court. The National Labor Relations Act, Section 10 (a), expressly declared the Board's power to take cognizance of unfair labor practices affecting commerce to be exclusive. The section as reworded in the Labor Management Act of 1947, 29 U. S. C. A. § 160 (a), does not contain the earlier express declaration; and on this fact appellant predicates much of his argument. See, however, the Fourth Circuit decision in Amazon Cotton Mill *v.* Textile Workers Union, 167 F. 2d 183, holding that a union may not sue the employer in behalf of its members for reinstatement and damages for loss of pay consequent on a strike wrongfully provoked by an employer. The court, 167 F. 2d at page 187 of its opinion, said: 'The change in the statute upon which reliance is placed was clearly intended, not to vest the courts with general jurisdiction over unfair labor practices, but to recognize the jurisdiction vested in the courts by section 10, subsections (j) and (l), section 208 and section 303, to which we have heretofore made reference, as well as the power in the Board, conferred by the proviso in section 10 (a) to cede jurisdiction to state agencies in certain cases.' This court, citing with approval the foregoing decision, has interpreted the statutory change in like manner. Schatte *v.* International Alliance, 9 Cir., 182 F. 2d 158, 166, certiorari denied, 340 U. S. 827, 71 S. Ct. 64, 95 L. Ed. 608. It is argued that the Board, although having authority to require the offending union to reinstate and financially to make whole the victim of the unfair labor practice, is without power to assess punitive damages; consequently the view should be taken that Congress did not intend to preclude the victim from enforcing this private right in an action at common law. However, *we think it evident that since the Act provides a procedure for redress and a corresponding remedy, both the procedure and its remedy are exclusive* in the absence of an express provision or Board delegation to the contrary. (Italics ours). As said in Nathanson *v.* N. L. R. B., 344 U. S. 25, 27, 73 S. Ct. 80, 82; 'A back pay order is a reparation order designed to vindicate the public policy of the statute by making the em-

ployecs whole for losses suffered on account of an unfair labor practice. (Citation). Congress has made the Board the only party entitled to enforce the Act.' A remark of Justice Holmes in Charleston & Western Carolina Railway Co. v. Varnville Furniture Company, 237 U. S. 597, 604, 35 S. Ct. 715, 717, 59 L. Ed. 1137, though dealing with an unrelated subject, is pertinent here. 'When Congress,' he said, 'has taken the particular subject matter in hand, coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go farther than Congress has seen fit to go.'

"Decisions touching the subject under inquiry, of which there are many, have quite uniformly adhered to the view that the Act's provisions for a comprehensive remedy preclude other action by way of a different or additional remedy for the correction of the same grievance. It would be a work of supererogation to cite or to review these authorities. A very late decision of the Supreme Court, namely Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776 (A. F. L.), 346 U. S. 485, 74 S. Ct. 161, is illustrative of the general trend of thought in that tribunal. The discussion there shows the imminent likelihood of conflict where the attempt is made to apply different remedies on the basis of an assumed distinction between rights which are public and those which are claimed, as here, to be purely private."

What we have quoted above from Born v. Laube is parallel with the situation here under consideration—the only difference which we have been able to discern being that the unfair labor practice and the acts which constituted same were alleged in the Born case to be on the part of the union and its agents, while in the instant case it is alleged that the acts were on the part of individuals who were acting as agents for both the union and the employer defendant. According to these authorities, if the plaintiff had been treated wrongfully under the allegations of his petition, he should have taken his complaint to the National Labor Relations Board. That board has full power to order him reinstated, to require that he be made whole for any loss sustained, and to prevent the recurrence of the unfair practice. This power the National Labor Relations Board may exercise against the employer, the employee, the Union or either.

The plaintiff, in support of his contention, cites and relies al-

most altogether on United Construction Workers of America *v.* Laburnum Construction Corporation, 347 U. S. 656 (74 Sup. Ct. 833, 98 L. ed. 1025). That case, under its facts, is quite different from the facts in the case now under consideration. It must be kept in mind that the Labor Management Relations Act is quite different in its provisions from the provisions concerning the question before us. In United Construction Workers of America *v.* Laburnum Construction Corporation, the court said: "The Labor Management Relations Act sets up no general compensatory procedure except in such minor supplementary ways as the reinstatement of wrongfully discharged employees with back pay." Further, the court points out in that case that there was no remedy before the National Labor Relations Board for the employer, under the facts of that case, and points out that the proper remedy for an employee who has been wrongfully discharged is before the National Labor Relations Board. To our way of thinking, this decision of the United States Supreme Court does not sustain the contentions of the plaintiff. Counsel for the plaintiff call our attention to many other decisions of which we have taken note and given consideration. It is our opinion that, in view of what we have said in division 1 of this opinion, none of these authorities, properly construed in relation to the facts here, sustains the contentions of the plaintiff. Those cases are: *Riley* v. *Wright,* 151 *Ga.* 609 (107 S. E. 857); *Estes* v. *Perry,* 167 *Ga.* 902 (147 S. E. 370); *McIntyre* v. *Harrison,* 172 *Ga.* 65 (157 S. E. 499); *O'Jay Spread Co.* v. *Hicks,* 185 *Ga.* 507 (195 S. E. 564); and *Williams* v. *Cedartown Textiles,* 208 *Ga.* 659 (68 S. E. 2d 705).

· The court did not err in sustaining the demurrers of the defendants to the petition.

*Judgment affirmed. Carlisle, J., concurs. Townsend, J., concurs specially.*

TOWNSEND, J., concurring specially. I cannot agree with the decision in this case holding that the courts of Georgia are without jurisdiction of the subject matter for the reason that exclusive jurisdiction is vested in the National Labor Relations Board under 29 U. S. C. A. § 151 et seq. The case is here on demurrer, and, under the allegations of the petition, the N. L. R. B. has no jurisdiction of the action for the reason that it does not appear

that "the activity of the employer defendant constitutes what is defined as 'affecting commerce,'" as set out on page 4 of the majority opinion. The term "affecting commerce" means interstate commerce only. J. L. Brandeis & Sons *v.* N. L. R. B., 142 Fed. 2d 977; Continental Oil Co. *v.* N. L. R. B., 113 Fed. 2d 473; N. L. R. B. *v.* Gleuk Brewing Co., 144 Fed. 2d 847; Pueblo Gas & Fuel Co. *v.* N. L. R. B., 118 Fed. 2d 304. Nothing in this petition shows that the employer is either engaged in interstate commerce or that its intrastate business is of such a character as to affect interstate commerce, and there is accordingly no reason to suppose that the N. L. R. B. would have any jurisdiction. If, under facts not appearing from this petition, it has exclusive jurisdiction of the matter, then the defendants' remedy would have been to file a plea to the jurisdiction.

Accordingly, I think that the petition shows jurisdiction in the State court, and that the demurrer must be decided on its merits. The petition alleged that the plaintiff was employed by Merritt-Chapman & Scott "by and at the direction of the Union", and was paid up until the date of his discharge. He seeks, in addition to exemplary damages and attorney fees, a decree of court that the defendants issue him a union book "entitling him to work on union jobs," plus damages equal to his previous weekly salary up to the date of trial, or, in the alternative, damages equal to 21 years of full employment in the amount of $242,697 for work as a pipefitter.

Since it is not alleged that any contract of employment existed other than a contract at the will of the parties, there is no cause of action for breach of contract of employment under Code § 66-101, or for procuring the breach of a contract under Code § 105-1207. Nor is the remedy of specific performance sought against the union officials to compel them to comply with their contract, if one existed, to give the plaintiff a union card; and the plaintiff, by bringing this case on writ of error to this court rather than the Supreme Court, shows his abandonment of any attempt to seek a decree authorizing specific performance and thus obtaining the relief of being issued a union card. Insofar as it is sought to recover wages from the time of the discharge to the time of trial, the action is not sustainable because the plaintiff shows no contract entitling him to such wages, nor does he

show that the wages have been earned. Insofar as the petition seeks damages for loss of wages for 21 years in the future, based on the theory that deprivation of a union card will proximately result in such loss to the plaintiff, the action is not sustainable because Code (Ann. Supp.) § 54-903 provides as follows: "No individual shall be required as a condition of employment, or of continuance of employment, to pay any fee, assessment, or other sum of money whatsoever to a labor organization." It appears from the petition that, to procure a union card, it is necessary to pay certain fees and assessments to a labor organization. The petition alleges no facts tending to show that the plaintiff's deprivation of a union card upon payment of these fees and assessments would result in the illegal deprivation of future employment, and this petition specifically states that the alleged right of action here is not based upon the act of 1947 (Ga. L. 1947, p. 616 et seq.), of which the above cited Code section is a part. Cf. *Sandt* v. *Mason*, 208 *Ga.* 541 (67 S. E. 2d 767), an action for damages for loss of employment due to union interference with non-union personnel, where it was held that, in the absence of contract, damages could not be recovered against the employer, either under the 1947 act or under general law.

As to the remaining defendants, the action for damages fails because it is not shown that, in view of Code (Ann. Supp.) § 54-903, supra, the union card is a condition precedent to gainful employment. It is alleged only that the plaintiff, by paying certain sums demanded by officials of the Union, was entitled to union membership; and that the fraudulent act of these officials in refusing him a union book (the symbol of such right of membership) deprived him of his "right to work on union jobs." Under these allegations, it is a condition precedent to the plaintiff's right to redress from the courts to seek first redress within the framework of the unincorporated union association in which he seeks to obtain the emblements of membership; and the petition sets out no cause of action against the Union officials in their representative capacity for the reason that no such redress was sought within the framework of the Union. *Union Fraternal League* v. *Johnston*, 124 *Ga.* 902 (53 S. E. 241); *Holmes* v. *Brown*, 146 *Ga.* 402, 405 (91 S. E. 408); *Bowden* v. *Kennedy*, 186 *Ga.* 174, 179 (197 S. E. 325). No fraud is alleged against

these defendants other than acts as officials, agents, and representatives of the Union in which membership is sought. Accordingly, the trial court properly sustained the general demurrers of the employers and also of the individual Union officials who are defendants herein.